Filed 7/29/25  P. v. Belton CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C101717 |
| Plaintiff and Respondent, | (Super. Ct. No. 05F04359) |
| v. | |
| WILLIE BELTON, | |
| Defendant and Appellant. | |

Defendant Willie Belton was convicted in 2007 of domestic violence charges with a great bodily injury enhancement, two prior strikes, and three prior prison term enhancements.  He was sentenced to prison for 7 years plus 25 years to life.  He appeals from a resentencing order made under Penal Code section 1172.75 wherein the trial court struck the three prior prison term enhancements but otherwise left the sentence unchanged.  (Statutory section citations that follow are to the Penal Code.)  He contends the trial court abused its discretion in declining to reduce the sentence further by striking the great bodily injury enhancement.  We will affirm.

1

FACTS AND HISTORY OF THE PROCEEDINGS

Conviction and Original Sentencing

We take the statement of facts from this court's opinion in defendant's direct appeal in *People v. Belton* (Nov. 18, 2008, C055046) [nonpub. opn.].

Defendant and the victim dated for a few months but broke up in April 2005 due to defendant's drug use. The following month, the victim was walking down the street to meet a male friend when defendant suddenly grabbed her from behind, turned her around, grabbed her by the hair, and slammed her head against a brick wall three times. The friend, who was only about 15 feet away, approached and grabbed defendant, enabling the victim to break free and start to cross the street. In response, defendant hit the friend so hard that he fell to the ground. Defendant then dragged the victim back across the street and punched her, causing her to fall to the ground. While she was on the ground, defendant kicked her and stomped on her arm. Defendant did not stop until the friend pushed him away from the victim. The victim required multiple stitches and lost a tooth. (*People v. Belton, supra*, C055046.)

In 2007, a jury found defendant guilty of willful infliction of corporal injury on a spouse or cohabitant (§ 273.5, subd. (a); count one) and battery causing serious bodily injury (§ 243, subd. (d); count two). As to count one, the jury also found true that defendant personally inflicted great bodily injury. (§ 12022.7, subd. (e).) The jury found true the allegation of three prior prison term enhancements (former § 667.5, subd. (b)) and that defendant had two prior strike convictions (§§ 1170.12, 667, subds. (b)-(i)). The prior strikes were based on a 1996 conviction for assault with a deadly weapon (§ 245, subd. (a)(1)) and a 1983 conviction for shooting at an occupied dwelling (§ 246).

Later in 2007, defendant was sentenced to prison for an aggregate term of 7 years plus 25 years to life, as follows: 25 years to life for count one (§ 667, subd. (e)(2)(A)(ii)) plus four years consecutive for the great bodily injury enhancement, 25 years to life for

2

count two stayed under section 654, and one year consecutive for each of the three prior prison term enhancements (or three years total). This court affirmed the judgment on appeal. (*People v. Belton, supra,* C055046.)

<u>Recall</u> <u>and</u> <u>Resentencing</u>

The Department of Corrections and Rehabilitation notified the trial court that defendant was eligible for resentencing under section 1172.75. In 2024, the court appointed counsel and requested briefing.

In his brief, defendant asked the trial court to dismiss his three prior prison term enhancements, strike his prior strikes, and stay the punishment for the great bodily injury enhancement. Defendant argued he posed a lower risk to reoffend or commit future violence because he was now 64 years old. He also suffered from various health problems, including chronic back and hip pain, dyslipidemia, hypertension, an enlarged prostate with lower urinary tract symptoms, bilateral bunions, and hammer toes on both feet. He used a cane and wheelchair to ambulate and argued he had "difficulty performing even minor physical activities." In addition, he had already served 19 years in custody, and his continued incarceration was no longer in the interest of justice.

Defendant further argued he had made rehabilitative efforts while incarcerated and participated in self-help programs and vocational opportunities, including a 40-hour conflict resolution course, a basic and advanced workshop in alternatives to violence, and a domestic violence prevention class. If released, he planned to work with community youth and continue participating in drug treatment and violence prevention programs. Defendant had also worked to strengthen his family ties while incarcerated, and he submitted supportive letters from his daughter and nephew.

In addition, defendant argued his crimes resulted from underlying mental health issues. Defendant told the probation officer he had been diagnosed with bipolar disorder and paranoid schizophrenia, and he had been taking psychiatric medications since 1984.

3

Before defendant's original sentencing hearing, an evaluating psychologist determined that defendant suffered from a "genuine psychotic disorder" and his use of substances at the time of the crimes could have worsened his disorder and impaired his ability to understand the nature, quality, and wrongfulness of his actions. However, the psychologist also said there was evidence showing that defendant might not have been suffering from a psychotic disorder. In December 2006, the victim told a defense investigator that she thought defendant needed mental health and drug treatment instead of incarceration. And defendant's prison records indicated he suffered from mood disorders, audio and visual hallucinations, and post-traumatic stress disorder.

Defendant argued there were multiple reasons to strike his prior strike and dismiss the great bodily injury enhancement, including that multiple enhancements had been alleged, applying the enhancement resulted in a sentence of more than 20 years, and the current offense is connected to mental illness. Also, defendant argued (incorrectly) that the current offense is not a violent felony as defined in section 667.5, subdivision (c). (§ 1385, subd. (c)(2).) But defendant's current crime is a violent felony under section 667.5, subdivision (b) because the jury found the great bodily injury enhancement to be true. (§ 667.5, subd. (c)(8).)

In April 2024, the prosecution filed a brief asking the trial court to strike the prior prison term enhancements but otherwise leave the sentence unchanged. The prosecution argued that, when considering whether to strike the prior strikes, the court should not rely on section 1385, subdivision (c)(2) because the "three strikes" law is an alternative sentencing scheme, not an enhancement. As to the great bodily injury enhancement, striking it would not be in the furtherance of justice because defendant's current crimes were violent and "senseless," and he had a "violent" prior criminal history, including his two prior strikes, which were violent offenses involving domestic violence.

During the July 2024 resentencing hearing, the trial court noted it had considered the briefs and a letter from defendant expressing remorse. Defendant argued he had

4

matured since being incarcerated, and he had engaged in rehabilitation even before becoming eligible for resentencing. He had also won a writing contest and had published in a book an essay about his life called, "Please, God, Forgive Me for My Sins."

The court stated it had "thoroughly considered the record and the totality of the circumstances," and would dismiss the prior prison term enhancements but otherwise leave the sentence unchanged. As to the prior strikes, the court considered defendant's rights, society's interests, the circumstances of the current offense, and defendant's criminal history, including the nature of his prior strike convictions.

The court noted defendant had been 45 years old and recently released from prison when he committed the current crimes, which caused severe injury to the victim and included a serious and violent felony. This was his sixth domestic violence related conviction, his sixth felony, and his third strike conviction. The court described defendant's criminal convictions as an adult, including: (1) two separate convictions for battery (§ 242) in 1980; (2) misdemeanor receipt of stolen property (§ 496) in 1981; (3) petty theft (§ 484) in 1981; (4) shooting at an inhabited dwelling (§ 246) in 1983 after he shot at his then-girlfriend's front door (his first strike offense); (5) being a felon in possession of a firearm (former § 12560) in 1985; (6) battery against a peace officer (§ 243, subd. (c)) in 1987; (7) felony evading a peace officer (Veh. Code, § 2800.2) in 1989; (8) two separate convictions for misdemeanor domestic violence (§ 273.5, subd. (a)) in 1993 and 1995; (9) assault with a deadly weapon (§ 245, subd. (a)) in 1996 after he stabbed his father in the stomach with a screwdriver (his second strike offense); and (10) felony domestic violence (§ 273.5) in 2003 after he beat a woman unconscious. The court explained, "the point is that [defendant] is someone who was taught more than once through the application of formal sanctions . . . that criminal conduct isn't acceptable. Yet he failed or refused to change his ways. And he left multiple victims in his wake."

Although several of defendant's crimes were committed while he was youthful, the court found that any mitigating effect was "negated and outweighed by the fact that

5

his criminality did not cease there[after]." And his propensity for violence had not decreased as he had gotten older. In addition, although defendant's prior strike convictions were remote, any mitigating effect was outweighed by his "subsequent criminality and imprisonment."

The court noted defendant was currently 64 years old, suffered from medical ailments, had been incarcerated for over 19 years, and had engaged in rehabilitative efforts while in prison. Defendant also had supportive family members and wanted to succeed on parole. These were all "positive post-conviction factors."

However, it was not in the interest of justice to strike any of his prior strikes because that would result in defendant being immediately released. Such a result would "entirely minimize the risk he poses on society and would endanger the public." In addition, defendant did not fall outside the spirit of the three strikes law. Reimposing the third strike sentence was not overly severe given the nature of the current crimes and defendant's extensive criminal history.

The court also declined to dismiss the great bodily injury enhancement. In so doing, the court said it had weighed the same factors and circumstances as it had when considering whether to strike one of the prior strikes, and it adopted and incorporated the "same balancing or reasoning." The court acknowledged the mitigating circumstances as outlined in section 1385, subdivision (c)(2) but found that none of them applied to defendant in this case. Still, "even if one or more of them did," including the mental illness factor under section 1385, subdivision (c)(2)(D), "it would not make a difference today" because dismissing the enhancement would "accelerate" defendant's potential release from prison and therefore "endanger public safety as that term is defined in [section 1385]." Defendant had "repeatedly" demonstrated his propensity to pose a "serious danger to the community," especially through "violent acts and attacks. On balance, neither the passage of time thus far, his current age, his physical ailments, nor the self-help programs in the court record or other rehabilitative efforts reflected to date,

6

even when combined, outweigh the likelihood that his release would result in physical injury or other serious danger to others." The court had "considered" the fact that defendant would only be released if the Board of Parole Hearings first found he no longer presented an unreasonable risk of danger to the public.

The court then said that, even if dismissing the enhancement would not endanger the public at the time of his future release, it would still decline to do so. The court reasoned the presumption in favor of dismissal was "outweighed" by the general sentencing objectives outlined in California Rules of Court, rule 4.410 (rule references that follow are to the California Rules of Court), including protecting society, punishing defendant, encouraging defendant to lead a law-abiding life in the future, deterring him and others from future criminal conduct, preventing defendant from committing new crimes, and achieving uniformity in sentencing.

The court noted that, in determining what was in the furtherance of justice, it was considering not only "who the Defendant is or may be or wants to be today. It's also looking at the facts and circumstances of the past conduct, including the effect his crime had on the victims. And it's looking at why we sentence those convicted of crimes. [Defendant's] overall record shows him to be a recidivist multiple times over with a propensity for violence, inclusive of not only using his hands to beat people on multiple occasions, but also using weapons." Under the "totality of [the] circumstances," it was not in the interest of justice to dismiss the enhancement.

The court then struck the three prison term enhancements and sentenced defendant to prison for four years plus 25 years to life, as follows: 25 years to life on count one plus four years consecutive for the great bodily injury enhancement, and 25 years to life on count two stayed under section 654.

Defendant timely appealed.

DISCUSSION

Defendant contends the trial court abused its discretion in declining to strike the great bodily injury enhancement. According to defendant, there was no clear and convincing evidence that releasing him early would endanger public safety, especially since he was 64 years old at the time of resentencing, had engaged in rehabilitation, and suffered from medical issues. Defendant argues the court focused too much on his criminal history instead of considering his "exemplary" prison disciplinary record as neither party presented evidence of any prison rule violations other than some violations noted in the original 2007 probation report. In addition, defendant contends the trial court failed to give "great weight" to the mitigating circumstances in section 1385, subdivision (c)(2), especially since the great bodily injury enhancement results in a sentence of more than 20 years, and his current crimes are connected to mental illness.

<u>Applicable</u> <u>Law</u>

Under section 1385, a trial court "shall dismiss an enhancement if it is in the furtherance of justice to do so." (§ 1385, subd. (c)(1).) In exercising its discretion, "the court shall consider and afford great weight to evidence offered by the defendant to prove" one of nine enumerated mitigating circumstances, including whether application of the enhancement could result in a sentence exceeding 20 years (§ 1385, subd. (c)(2)(C)) and the current offense is connected to mental illness (§ 1385, subd. (c)(2)(D)). Proof of these mitigating circumstances "weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).)

As our Supreme Court has explained, section 1385 does not create a rebuttable presumption in favor of dismissing an enhancement that can only be overcome by a finding that dismissal endangers public safety. (*People v. Walker* (2024) 16 Cal.5th 1024, 1034.) Indeed, even if the court does not make a finding of danger to public safety it retains discretion to determine whether countervailing factors -- other than public safety

-- " 'nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*Id*. at p. 1029.)

We review a trial court's denial of a motion to dismiss a sentence enhancement under section 1385 for abuse of discretion. (*Nazir v. Superior Court* (2022) 79 Cal.App.5th 478, 490.) "A court abuses its sentencing discretion when it acts arbitrarily and capriciously, relies on improper matter in reaching its decision, or is unaware of the scope of its discretion so that it does not exercise informed discretion at all." (*People v. Knowles* (2024) 105 Cal.App.5th 757, 765.)

<u>Analysis</u>

There is no merit to defendant's contentions that the trial court abused its discretion in declining to dismiss the great bodily injury enhancement. Defendant extensively argued in his sentencing briefs and during the hearing that the trial court should dismiss the enhancement under section 1385, including that doing so was in the interest of justice because the enhancement resulted in a sentence of more than 20 years and because his crimes were related to his mental health issues. Defendant also argued he posed a lower future risk to public safety given his age, diminished physical capacity, and lengthy incarceration. In addition, defendant detailed his rehabilitative efforts, including participating in self-help programs, drug treatment, and vocational opportunities.

The trial court noted it had reviewed defendant's submitted materials and described defendant's "positive post-conviction factors," including defendant's age, lengthy incarceration, limited physical capacity, family support, and rehabilitative efforts. However, these mitigating factors were outweighed by defendant's extensive criminal history and propensity for violence. Defendant had committed multiple violent acts on various victims, and he therefore posed a "serious danger to the community." The court further explained that, even if dismissing the enhancement would not endanger the

public, doing so still would not be in the interest of justice under the general sentencing objectives as outlined in rule 4.410.

Although the court did not discuss defendant's prison disciplinary record, this does not lead us to conclude the trial court erred. As defendant acknowledges, he failed to present any evidence of his prison disciplinary record during the resentencing hearing, let alone argue that the court should consider this as a mitigating factor. He has therefore forfeited the issue on appeal. (See *People v. Walker, supra*, 16 Cal.5th at p. 1034 [defendant bears the burden under § 1385, subdivision (c)(2) to prove the presence of mitigating circumstances]; see also *People v. Lowery* (2020) 43 Cal.App.5th 1046, 1054 ["a party must raise an issue in the trial court if they would like appellate review"].)

Under the circumstances, there is no evidence that the court was unaware of defendant's arguments in favor of mitigation, misunderstood its discretion under section 1385, or failed to follow the law. (See *People v. Ramirez* (2021) 10 Cal.5th 983, 1042 ["Absent evidence to the contrary, we presume that the trial court knew the law and followed it"].)

DISPOSITION

The judgment is affirmed.


 

HULL, Acting P. J.

We concur:


ROBIE, J.


DUARTE, J.